Good morning, and may it please the Court, Michael Marks, Federal Defenders for Mr. Gonzalez-Flores. The District Court below erred in denying Mr. Gonzalez's motion to dismiss the indictment. This Court reviews de novo, and it should reverse. In order to prevail, Mr. Gonzalez has to satisfy the three prongs of 1326d. I want to focus today principally on the third prong, that his removal was fundamentally unfair, meaning that there was both a due process violation and then a prejudice, Mr. Gonzalez. The reason I focus on that is that this Court has said several times that if there is a due process violation, that takes the form of failing to properly advise a respondent of his right to seek a form of relief for which he is eligible. That will satisfy the first two prongs of 1326d, because we don't fault people for not appealing a right that they didn't know they had. So moving on to the due process violation, first a literal examination of the record before the IHA. The immigration judge never says, Mr. Gonzalez, you are eligible for voluntary departure, you may apply for that form of relief, and you may present evidence to support that application. Do you wish to apply? Is that what you're saying is the minimum that's necessary? I know Melendez Castro, he said there is some form of relief, but you're not eligible. So he did say the beginnings, I guess, of what you're suggesting. The only other application you may be eligible for is something called voluntary departure. And it says, I can deny it at my discretion, deny. But he does give that invitation to the, or information to the alien. And we said that wasn't enough in Melendez Castro, because then he immediately says, denied, I have a blanket rule. Well, I think in this case, the IHA actually did less than the judge did in Melendez Castro. In Melendez Castro, the IHA said, sir, you're eligible for voluntary departure. But I'm going to tell you right now, your criminal history, I don't grant voluntary departure to people with criminal history. And the court said, look, that's not a meaningful advisable of the right to apply for voluntary departure, because any respondent who heard that would be discouraged from applying. And here's what happened in this case. The IJ says, I need to find out if you are eligible for relief. Not whether you are entitled to or whether I'm going to grant it, but whether you are eligible for relief. It goes through a number of questions. And at the end of that, what the IJ says is, he's not eligible for any relief or any other benefits under the immigration laws. So certainly at that point, and before he discusses voluntary departure, there's been no indication to Mr. Gonzalez that he can apply for voluntary departure. He says specifically he's not eligible for cancellation. He's not eligible for judgment of status. And as for voluntary departure, I'm not going to grant that. So the government's theory, as I understood part of it, was, well, let me, I'll assume that you could apply or would apply, and let me draw out from you the factors that other IJs have thought were significant determining whether you're eligible. Like how long have you been in the country, do you have citizens, children, relatives. And then based on the information that he gathered, said, I'm going to deny it. So as if, as I understand the government, it's as if the IJ evaluated his application for voluntary departure. And so I understand the government's theory to say, well, even if he didn't say, do you wish to apply, that what he did was essentially equivalent to allowing him to apply. And in this case, it's not. While the IJ did ask certain questions that would identify what might be equities that would support an application for relief, the IJ didn't ask everything he could. And he certainly didn't go the extra step, which was required under the regulations and as defined by this court, to say, sir, is there anything else that you'd like to say? And whether or not... But I thought he did ask if there was anything else he wanted to say. He said that in regard to his questions that were identifying his eligibility for relief. Right. Yeah. All right. Anything else that you want to tell this court? Right. And so at the beginning of the hearing, he said, I need to find out if you are eligible for relief. And in order to establish eligibility for voluntary departure, all Mr. Gonzales had to show at the hearing was that he hadn't received voluntary departure before. And we're talking about pre-conclusion voluntary departure. So the only other thing is that he hadn't been convicted of an aggravated felony. That's all that he needs to show for him to be eligible. Have you looked at our opinion in Valdez-Novoa? I have, Your Honor. Okay. And how do you distinguish this case from that case? We went through pretty carefully all the BIA's decisions on voluntary departure. And on the plus side, your client's criminal record isn't as bad as other criminal records. On the negative side, your client has no equities. Really, there's just nothing here for your client. Well, I disagree with the court that there are no equities. Here's what I see the equities for Mr. Gonzales to be at the time of his removal hearing. First, he has no prior removals. His manner of entry, he came as a juvenile with his parents. There wasn't any allegation that he had been smuggled into the country. These are things that are mentioned in several of the BIA cases and 9th Circuit cases. He had been here for five years. He had a work history. He had an education history. And those things didn't get to the court. And in addition, I think... Well, when I looked at the other cases, the cases he cited, because of the alien's burden to establish the equities, he had been in the country five years. He had, I guess, two years of education here. Because you said he entered at 15. He was in the 11th grade. So two, three years, and then two years or less of work. And there's nothing even close to that as being identified by an IJ as being adequate for equities. There's just no case that was close. Well, so I agree. I was unable to find a BIA case that talks about, and whether affirming, reversing a grant, or a denial of voluntary departure, I could not find a case on all four with this one. I think Mr. Gonzalez is different from both Mr. Valdez-Novoa and Mr. Rojas-Pedroza in that his criminal history, as the court noted, is not as great. His equities are not as few. In Valdez-Novoa, he had a pretty serious criminal history. I think he had four- He also had pretty strong equities. He did. And so that's one end of the spectrum. I think in Rojas-Pedroza, the court cited a BIA case that stated, look, if you don't have any equities, that in that case it may be possible for the IJ to deny voluntary departure, even if you don't have a criminal history. So I think our standard, though, is that the alien has to show it's plausible, not that it's just possible or conceivable. And so your arguments are, look, it's possible he could have gotten voluntary departure because even though he didn't have strong equities, he didn't have very many negatives either. But we don't have a case that would suggest that it's plausible, that it's beyond just possible. Well, I don't have a BIA case that talks about specific facts where they're evaluating a grant or denial of voluntary departure. But the BIA has told us what the courts need to do with regard to granting or denying pre-conclusion voluntary departure. And they've said not very much because the government gets something back in return. This clears dockets. And in Arguelles-Canco, the BIA says, we think Congress intends to grant broad discretion to grant this form of relief. And I think they were indicating, look, you've got to exercise discretion, but you can just kind of grant this as long as it's reasonable. Well, we know the IJ here didn't grant it, focusing on the theft, crime of violence, robbery. And so the two additional factors that the IJ didn't have before them, the couple of years of schooling and the couple of years of work history, there's no case suggesting that that would have changed the IJ's opinion. That's what my concern is because you're saying, well, the IJ's evaluation to deny the voluntary departure was implausible, I guess, had the IJ known everything. Well, I don't say that it was implausible for them to deny it. I think that the BIA grants discretion, and if you look at these, and there are a number of unpublished decisions, they tend to leave the IJ's decision in place. And I think the IJ's have broad discretion under the rules. And really what we don't see, I think, Judge Bybee, you mentioned in Valdez-Navoa, in your opinion, that these are the same cases cited back and forth throughout all of the same 1326d litigation. What we don't see is appeals from the grant of voluntary departure. We're kind of behind the ball here as the defense because we know that thousands of people are granted voluntary departure, but we don't see the facts of that case. I think it can be persuasive to find BIA cases that are on all fours. When we don't, I think the court has to revert back to the standard of Arguelles-Campo and say, look, this is something that the IJ has broad discretion to grant. His criminal history wasn't that bad, and he had some equities. And I think that makes his relief plausible. And I see I'm out of time. I will allow you a moment for a minute for rebuttal. Thank you. Good morning. May it please the Court, Scott Jones for the United States. Your Honors, there was no due process violation here, nor was there prejudice. The IJ conducted a fundamentally fair hearing, which he considered the personal history and the individual characteristics of Gonzalez and determined in his discretion not to grant voluntary departure. Let me ask you this. The regulations say the immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing. So the immigration judge didn't do that here, did he? He did not, Your Honor. And, Your Honor, you summed up the government's argument precisely earlier. He didn't do that, but it doesn't matter because he treated Mr. Gonzalez as if he had applied for voluntary departure. It is as if he had said, Would you like to apply for voluntary departure? Tell me about yourself. Now I'm deciding not to grant it. And it is like that because he collected all of the relevant facts,  relevant to a determination of whether or not voluntary departure was appropriate. And in his discretion, he chose not to grant it. What relevant facts did he know on the positive side? He knew the negative, which is the robbery. What did he know on the positive side? He knew that Mr. Gonzalez had been in the country for approximately five years. He knew that he had a family history in Mexico. There are very few positive equities, Your Honor. Although I will say that when he decided not to grant voluntary departure, he, and I'm looking at page 12 of the excerpts of record, that negative aspect is enough to overcome the positive aspects that the respondent has in this case, which are very few except for those normally associated with any residence of any duration. So it may very well be that the I.J., in this case, gave Mr. Gonzalez the benefit of the doubt as to some degree of education, some amount of schooling during his teens spent in the United States, and some degree of employment. He may have. He may not have. But he may have. Why isn't Melinda Castro controlling here? When Melinda Castro, the I.J., said, well, there is this thing called voluntary departure, which you may be eligible for, but I have a blanket rule that people in your situation, I always deny it at my discretion. I mean, although this I.J. didn't have a blanket rule, didn't this I.J. do essentially the same thing? He did not, Your Honor, and it is the existence of that blanket rule that I think the Melinda's court had the most trouble with. The I.J. in this case conducted the exact evaluation that the Melinda's court criticized that I.J. for not conducting. He gave this individual a personal consideration of his equities and decided not to grant voluntary departure. Now, if I could turn briefly to the plausibility test that you discussed with Mr. Marks. That is a two-part test. First, we identify the relevant factors to the form of relief sought, and second, in the light of those factors and the alien's unique circumstances, determine if it was plausible, not merely conceivable, that the I.J. would have exercised his discretion in the alien's favor. When, as here, the I.J. describes the balance that he has constructed, when the I.J. says here are all the positive equities I'm considering and here are all the negative equities I'm considering, no U.S. family, no U.S. wife, no wife at all, no kids at all, grandparents in Mexico, when he draws out that balance, the court doesn't have to go to other cases to determine if it is plausible that the only two factors Gonzales was able to later identify, some period of schooling and some period of work, would have affected that balance or not. Unless there are any further questions. I don't think there are further questions, Mr. Schultz. Thank you. Thank you. Mr. Marks? Thank you, Your Honor. Very briefly, with regard to deference to this immigration judge, if the court finds that there was this immigration judge violated due process, we can't defer to the decision that he came to. And I think the Melendez-Castro Court is a perfect example. That I.J. said didn't really matter what process you got, I'm not granting it. And there's no indication that this judge would have granted it had he provided full process. And what we really need to do is say is it plausible that an I.J. on a full record would have granted relief. And I think this court is perfectly capable of identifying the factors that the BIA has said an I.J. could consider and say on the record as it exists now, which is now complete, which it wasn't then, this court can evaluate Mr. Gonzales' claim to relief and evaluate it in terms of the relief sought, which is not that he gets to stay in the United States, but that he gets to leave himself and the 20-year-old man that he was at that point would have had the opportunity in the future to immigrate here lawfully. Thank you. Thank you. I appreciate the argument from both counsel.
judges: Melloy, Bybee, Ikuta